UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAURICIO ARAMBURO,      ) | |
|                     ) | No. CV-07-3087-JPH |
|       Plaintiff,   ) | |
|                     ) | ORDER GRANTING DEFENDANT'S |
|            v.      ) | MOTION FOR SUMMARY JUDGMENT |
|                     ) | |
| MICHAEL J. ASTRUE,      ) | |
| Commissioner of Social   ) | |
| Security,            ) | |
|                     ) | |
|       Defendant.   ) | |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on May 5, 2008. (Ct. Rec. 14, 16). Plaintiff Mauricio Aramburo ("Plaintiff") did not file a reply brief on or before May 5, 2008. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Kathryn Ann Miller represents the Commissioner of Social Security ("Commissioner"). The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 8). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14).

<u>**JURISDICTION**</u>

On June 28, 2004, Plaintiff filed a an application for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") benefits, alleging disability

since January 1, 2000.  (AR 18, 57-59).  Plaintiff's applications were denied initially and on reconsideration.  An administrative hearing was held before Administrative Law Judge ("ALJ") Peter J. Baum on October 23, 2006.  (AR 284-301).  On March 27, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-24).  On September 14, 2007, the Appeals Council denied Plaintiff's request for review.  (AR 4-6).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed an action for judicial review pursuant to 42 U.S.C. § 405(g) on October 4, 2007.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 52 years old on the date of the ALJ's decision.  (AR 288). Plaintiff completed school through the sixth grade in Mexico and apparently through the eleventh grade in the United States.  (AR 75, 288).  He testified that he could speak some English and read a little English, but was not able to write in English.  (AR 288). He indicated that he was able to read labels on the boxes in his prior work as a warehouse laborer.  (AR 292-293).  He has past work as a factory worker, a forklift operator, and a warehouse worker.  (AR 77).

Plaintiff alleges disability as of January 1, 2000, due to blindness in his right eye.  (AR 71).  However, he testified that he worked some type of construction work in 2000 and 2002 (AR 288) and reported stopping work on March 19, 2004 (AR 72).  Plaintiff

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 2

indicated he stopped working because "smoke from fire on the job affected [his] eyes and [he] had to quit. [He has] worked various other jobs but . . . had to leave due to [his] disability." (AR 72).

Plaintiff testified at the October 23, 2006 administrative hearing that he could not see out of his right eye as a result of an injury he sustained when he was 10 years old. (AR 289-290). Despite the right eye blindness, Plaintiff was able to perform his past work, use hand tools, obtain a driver's license, drive a car with no noted difficulties other than with parallel parking, and operate a forklift. (AR 290-292). Plaintiff stated he had also noticed a problem with his back and right leg for about three years, but had not informed any of his doctors of these complaints until just recently. (AR 291-292). He indicated that he could stand in one position for about half an hour before feeling pain, walk about 15 minutes at a time and sit about 15 to 20 minutes at a time. (AR 294-295). Plaintiff testified that, although doctors had told him that he should not drink alcohol, he continued to drink beer. (AR 289). He stated that he would drink about eight beers in a day, about three or four times a month. (AR 289, 293).

At the commencement of the administrative hearing, Plaintiff's counsel requested a consultative examination to inquire into Plaintiff's recent complaints of back pain and resulting leg pain. (AR 287). At the end of the hearing, the ALJ ordered that Plaintiff would be sent to a consultative exam to obtain additional information regarding these complaints. (AR 299-300). That examination was performed by Fred D. Price, D.O., on December 13, 2006. (AR 253-259).

1

**SEQUENTIAL EVALUATION PROCESS**

2    The Social Security Act (the "Act") defines "disability" as
3 the "inability to engage in any substantial gainful activity by
4 reason of any medically determinable physical or mental impairment
5 which can be expected to result in death or which has lasted or
6 can be expected to last for a continuous period of not less than
7 twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The
8 Act also provides that a Plaintiff shall be determined to be under
9 a disability only if his impairments are of such severity that
10 Plaintiff is not only unable to do his previous work but cannot,
11 considering Plaintiff's age, education and work experiences,
12 engage in any other substantial gainful work which exists in the
13 national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
14 Thus, the definition of disability consists of both medical and
15 vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156
16 (9th Cir. 2001).

17    The Commissioner has established a five-step sequential
18 evaluation process for determining whether a person is disabled.
19 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is
20 engaged in substantial gainful activities. If he is, benefits are
21 denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the
22 decision maker proceeds to step two, which determines whether
23 Plaintiff has a medically severe impairment or combination of
24 impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

25    If Plaintiff does not have a severe impairment or combination
26 of impairments, the disability claim is denied. If the impairment
27 is severe, the evaluation proceeds to the third step, which
28 compares Plaintiff's impairment with a number of listed

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 4

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

///

1
                            **<u>STANDARD OF REVIEW</u>**

2       Congress has provided a limited scope of judicial review of a

3  Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold

4  the Commissioner's decision, made through an ALJ, when the

5  determination is not based on legal error and is supported by

6  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

7  (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

8  1999).  "The [Commissioner's] determination that a plaintiff is

9  not disabled will be upheld if the findings of fact are supported

10 by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

11 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

12 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

13 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.

14 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

15 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

16 573, 576 (9th Cir. 1988).  Substantial evidence "means such

17 evidence as a reasonable mind might accept as adequate to support

18 a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

19 (citations omitted).  "[S]uch inferences and conclusions as the

20 [Commissioner] may reasonably draw from the evidence" will also be

21 upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

22 On review, the court considers the record as a whole, not just the

23 evidence supporting the decision of the Commissioner.  *Weetman v.

24 Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.

25 Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

26      It is the role of the trier of fact, not this court, to

27 resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If

28 evidence supports more than one rational interpretation, the court

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 6

may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged onset date.  (AR 20).  At step two, the ALJ determined that Plaintiff had the severe impairments of right eye blindness, history of pancreatitis, resolved, and history of colitis, quiescent.  (AR 20).  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 21).  The ALJ found that Plaintiff's residual functional capacity ("RFC") consisted of no exertional limitations, only occasional climbing of ladders/ropes or scaffolds, avoidance of concentrated exposure to hazards and limitations in working in jobs requiring depth perception or acute peripheral vision.  (AR 21).

///

///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 7

1    At step four of the sequential evaluation process, the ALJ

2 determined that, consistent with the opinions of the vocational

3 expert and in comparing Plaintiff's RFC with the physical and

4 mental demands of his past relevant work, Plaintiff was able to

5 perform his past relevant work as a warehouse laborer.  (AR 24).

6 Accordingly, the ALJ determined at step four of the sequential

7 evaluation process that Plaintiff was not disabled within the

8 meaning of the Social Security Act.  (AR 24).

9                            **ISSUES**

10    Plaintiff contends that the Commissioner erred as a matter of

11 law.  Specifically, he argues that:

12    1.   The ALJ erred by failing to fully and fairly develop the

13 record with regard to Plaintiff's back condition and literacy

14 issues;

15    2.   The ALJ erred by failing to conduct an adequate step

16 four analysis; and

17    3.   The ALJ erred by improperly rejecting lay evidence

18 regarding Plaintiff's illiteracy and Plaintiff's testimony

19 regarding both his illiteracy and his back problem.

20    This Court must uphold the Commissioner's determination that

21 Plaintiff is not disabled if the Commissioner applied the proper

22 legal standards and there is substantial evidence in the record as

23 a whole to support the decision.

24                          **DISCUSSION**

25 **I.  Develop the Record**

26    Plaintiff contends that the ALJ erred by failing to further

27 develop the record with respect to Plaintiff's back condition and

28 illiteracy.  (Ct. Rec. 15 at 13-15).  Plaintiff asserts that the

ALJ failed to recognize as severe Plaintiff's back condition and
failed to recognize that he was illiterate.  (Ct. Rec. 15 at 13).

### A.  Back Pain

Plaintiff has the burden of proving that he has a severe
impairment at step two of the sequential evaluation process.  42
U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912.  In
order to meet this burden, Plaintiff must furnish medical and
other evidence that shows that he has a severe impairment.  20
C.F.R. § 416.912(a).  The regulations, 20 C.F.R. §§ 404.1520(c),
416.920(c), provide that an impairment is severe if it
significantly limits one's ability to perform basic work
activities.  An impairment is considered non-severe if it "does
not significantly limit your physical or mental ability to do
basic work activities."  20 C.F.R. §§ 404.1521, 416.921.

Step two is "a de minimis screening device [used] to dispose
of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th
Cir. 1996), and an ALJ may find that a claimant lacks a medically
severe impairment or combination of impairments only when this
conclusion is "clearly established by medical evidence."  S.S.R.
85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir.
2005).  Applying the normal standard of review to the requirements
of step two, the Court must determine whether the ALJ had
substantial evidence to find that the medical evidence clearly
established that Plaintiff did not have a medically severe mental
impairment.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)
("Despite the deference usually accorded to the Secretary's
///
///

application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

With regard to the ALJ's duty to develop the record, the ALJ has an affirmative duty to supplement Plaintiff's medical record, to the extent it is incomplete, before rejecting his claim of a severe impairment. *See* 20 C.F.R. § 404.1512(e)(1); S.S.R. 96-5p (1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.")  The ALJ's duty to supplement Plaintiff's record is triggered by ambiguous evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

As noted by the Commissioner, despite numerous doctor visits for various health concerns, Plaintiff did not mention back issues until October of 2006, six years after his alleged onset date. (Ct. Rec. 17 at 8; AR 187).  At that October 16, 2006 visit, Plaintiff reported to Dr. Pham that he was in the middle of a disability claim and needed x-rays.  (AR 187).  However, Dr. Pham found that there were no prior records of back complaints and opined that x-rays would provide no benefit.  (AR 187).

At the administrative hearing, Plaintiff's counsel requested a consultative examination to inquire into Plaintiff's recent complaints of back pain and resulting leg pain.  (AR 287).  While the ALJ initially indicated that the record did not seem to reflect any back problems (AR 287), the ALJ nevertheless ordered that Plaintiff would subsequently be sent to a consultative exam to obtain additional information regarding back complaints (AR

299-300).  That examination was performed by Fred D. Price, D.O.,
on December 13, 2006.  (AR 253-259).

Plaintiff reported to Dr. Price that the onset of his back
pain was six to seven years prior to the exam, although Plaintiff
had never had a diagnosis or prior treatment, other than
medication, for his back.  (AR 255).  Plaintiff described a stiff
back with pain in the lumbar spine radiating to the right leg and
a stiff neck.  (AR 255).

Dr. Price indicated that Plaintiff appeared in no acute
distress and was able to get up and down from the interview chair
and exam table and turn over with no real difficulties.  (AR 256).
Dr. Price observed that Plaintiff was not extremely uncomfortable
sitting, standing, turning over or lying supine.  (AR 257).  It
was noted that Plaintiff had more difficulty lying prone than
supine, with subjective discomfort in the right leg, there was
slight loss of calf size on the right, but otherwise no obvious
degenerative changes, muscle spasms, or physical findings of an
acute degenerative nature in the lumbar, cervical or thoracic
spine.  (AR 257-258).  Dr. Price stated "it is unclear why this
individual is not capable of at least medium work activity with
few if any restrictions."  (AR 258).  He opined that there were no
objective findings which would indicate he was unable to stand,
sit and walk 8 hours per day with normal breaks in an 8 hour day
for light to light-medium work activity."  (AR 258).  Dr. Price
determined that Plaintiff's "work place is not really restricted"
other than by his monocular vision impairment.  (AR 259).
///
///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 11

In light of Dr. Price's consultative examination, it is apparent that the ALJ executed his duty of fully and fairly developing the record with regard to Plaintiff's back condition. The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes*, 881 F.2d at 751. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The record evidence was developed and sufficient to support the ALJ's findings regarding Plaintiff's back complaints and resultant level of functioning.

### B.  Illiteracy

Plaintiff asserts that the ALJ erred by failing to consider his illiteracy or order any testing to confirm it. (Ct. Rec. 15 at 14-15). Plaintiff argues that the evidence in the record suggests that he is illiterate. (Ct. Rec. 15 at 17). The undersigned does not agree.

Regarding education as a vocational factor, the regulations state that "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1).

Here, Plaintiff did not previously allege that he was illiterate, for purposes of his disability claims, and no medical reports refer to a language barrier or diagnosis Plaintiff as illiterate. On December 13, 2006, Dr. Price indicated that Plaintiff "reads, writes and speaks English quite well." (AR 255). Plaintiff testified that he could speak some English and

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 12

read a little English, including labels on the boxes in his prior work as a warehouse laborer.  (AR 288, 292-293).  Plaintiff reportedly completed school through the sixth grade in Mexico and apparently through the eleventh grade in the United States.  (AR 75, 288).  Furthermore, despite the alleged illiteracy, Plaintiff was able to perform his past work as a factory worker, a forklift operator, and a warehouse worker with no evidence of difficulty, had obtained a driver's license, and was able to drive a car and operate a forklift.  (AR 290-292).  In addition, contrary to Plaintiff's argument regarding "lay evidence" (Ct. Rec. 15 at 18-19), there is no other evidence indicating that Plaintiff is unable to read and write a simple message such as instructions or inventory lists.

The foregoing evidence suggests that Plaintiff is able to read and write simple messages.  Plaintiff additionally appears to have greater than "little or no formal schooling."  Consequently, the undersigned concludes that the ALJ appropriately did not find that Plaintiff is illiterate as defined by the regulations.[1]

## II.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred by improperly rejecting Plaintiff's testimony without giving adequate reasons.  (Ct. Rec. 15 at 18-19).  The undersigned does not agree.

///

_____

[1]Regardless, the undersigned finds it significant that the hypothetical presented to the vocational expert, upon which the ALJ relied in making his disability determination, described the individual as "not literate in English in terms of either reading or writing."  (AR 297).  The inclusion of this characteristic in the ALJ's hypothetical would appear to make Plaintiff's argument as to literacy without merit.

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 13

1    It is the province of the ALJ to make credibility

2 determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

3 1995).  However, the ALJ's findings must be supported by specific

4 cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.

5 1990).  Once Plaintiff produces medical evidence of an underlying

6 impairment, the ALJ may not discredit Plaintiff's testimony as to

7 the severity of an impairment because it is unsupported by medical

8 evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

9 (citation omitted).  Absent affirmative evidence of malingering,

10 the ALJ's reasons for rejecting Plaintiff's testimony must be

11 "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th

12 Cir. 1995).  "General findings are insufficient:  rather the ALJ

13 must identify what testimony is not credible and what evidence

14 undermines the claimant's complaints."  *Lester*, 81 F.3d at 834;

15 *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may

16 consider at least the following factors when weighing Plaintiff's

17 credibility:  Plaintiff's reputation for truthfulness,

18 inconsistencies either in his testimony or between his testimony

19 and his conduct, Plaintiff's daily activities, Plaintiff's work

20 record, and testimony from physicians and third parties concerning

21 the nature, severity, and effect of the symptoms of which he

22 complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.

23 2002).  If the ALJ's credibility finding is supported by

24 substantial evidence in the record, the court must not engage in

25 second-guessing.  *Id.* at 959.

26    The ALJ considered the evidence of record and concluded that

27 Plaintiff's medically determinable impairments could possibly

28 produce some pain or other symptoms, but that Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 14

allegations regarding the pain and other symptoms were not entirely credible.  (AR 22-23).  The ALJ discussed the evidence of record and determined that Plaintiff's testimony with regard to the severity and functional consequences of his symptoms were not fully credible.  (AR 22-23).

The ALJ determined that medical records have identified little objective evidence which would account for Plaintiff's allegations of disabling impairments.  (AR 22-23).  A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).  The ALJ indicated that, "other than his right eye blindness, claimant's treating and examining physicians consistently characterized his impairments as 'minimal', 'mild', 'slight', 'quiescent' and 'resolving', with reference to the clinical and laboratory findings, which seems quite disproportionate to the severity of symptoms claimant has alleged."  (AR 23).  As noted by the ALJ, the objective medical evidence of record does not support Plaintiff's allegations of disabling pain and symptoms.

The ALJ noted that, inconsistent with Plaintiff's testimony that he could only speak some English and read a little English (AR 288), the consultative examiner, Dr. Price, indicated that Plaintiff reads, writes and speaks English quite well (AR 255). (AR 23).  No interpreter was needed for Dr. Price's consultative exam as Plaintiff "was able to understand the examiner with no difficulties."  (AR 253).

///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 15

1   The ALJ further noted that, although Plaintiff testifies to

2   severe, unremitting pain, the record reflects large gaps of time

3   between visits to medical professionals and that Plaintiff

4   received only minimal, conservative treatment for his complaints,

5   consisting primarily of pharmacological and palliative remedies.

6   (AR 23).  Conservative or minimal treatment during the relevant

7   time period may suggest a lower level of pain and functional

8   limitation.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

9   1995).

10   The ALJ also indicates that there are "numerous references in

11   the medical evidence which are indicative of claimant's non-

12   compliance with the medical regimen specified by his physicians."

13   (AR 23).  The undersigned notes, for example, that Plaintiff

14   testified at the administrative hearing that, although doctors had

15   told him that he should not consume alcohol, he continued to drink

16   beer.  (AR 289).  Noncompliance with medical care or unexplained

17   or inadequately explained reasons for failing to seek medical

18   treatment cast doubt on a claimant's subjective complaints.  20

19   C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th

20   Cir. 1989).

21   The ALJ additionally references Plaintiff's activities of

22   daily living.  (AR 23).  It is well-established that the nature of

23   daily activities may be considered when evaluating credibility.

24   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ

25   indicated that, inconsistent with Plaintiff's allegations of

26   disabling pain and symptoms, Plaintiff has indicated he is able to

27   cook, shop, do laundry, wash dishes; is able to get out and take

28   walks, drive an automobile, visit friends/relatives, talk on the

phone and requires no assistance in dressing or in personal grooming. (AR 23). The ALJ noted that "the physical and mental requirements of these household tasks and social interactions are consistent with a significant degree of overall functioning." (AR 23).

After reviewing the record, the undersigned finds that the reasons provided by the ALJ for finding Plaintiff not fully credible, as outlined above, are clear and convincing and supported by substantial evidence in the record. Accordingly, the ALJ did not err by concluding that Plaintiff's testimony with regard to the severity and functional consequences of his symptoms were not fully credible.

**III. RFC Determination**

Plaintiff asserts, in a cursory manner, that the ALJ's RFC determination failed to account for physical limitations documented in the record. The ALJ concluded that Plaintiff was capable of performing work with no exertional limitations. (AR 21).

RFC is defined as the most one can still do despite the individual's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making his RFC determination, the ALJ considers Plaintiff's symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence of record. The ALJ also considers the opinions of acceptable medical sources which reflect the judgment about the nature and severity of the impairments and resulting limitations.

///

While Dr. Price opined that Plaintiff was capable of performing "at least medium work activity with few if any restrictions" (AR 258), Plaintiff's RFC represents not the least that he can do despite his limitations or restrictions, but the most. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Dr. Price further stated that Plaintiff's "work place is not really restricted" other than by his monocular vision impairment. (AR 259). These statements are consistent with the 2004 state agency reviewer's opinion that Plaintiff had no exertional limitations (AR 117A) and Dr. Pham's October 2006 evaluation notes (AR 187). Contrary to Plaintiff's argument, the record does not support a more restrictive RFC determination than as assessed by the ALJ in this matter.

**IV.  Step Four Determination**

Plaintiff contends that the ALJ erred by failing to conduct an adequate and complete step four analysis. (Ct. Rec. 15 at 15-17). The Commissioner responds that the ALJ made the requisite factual findings to support his step four determination. (Ct. Rec. 17 at 15-16).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined he retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant

can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422
(9th Cir. 1988).  Plaintiff thus has the initial burden of
demonstrating he cannot perform his past relevant work.  *Hoffman
v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).  Only after
Plaintiff establishes his inability to perform his previous work
does the burden shift to the Commissioner to show that Plaintiff
can do less demanding substantial gainful work which exists in the
national economy.  *Hoffman,* 785 F.2d at 1425.  Regarding the
findings that must be made at step four, SSR 82-62 provides:

> In finding that an individual has the capacity to perform a
> past relevant job, the determination or decision must contain
> among the findings the following specific findings of fact:
> (1) A finding of fact as to the individual's residual
> functional capacity (RFC); (2) A finding of fact as to the
> physical and mental demands of the past job/occupation;
> (3) A finding of fact that the individual's RFC would permit
> a return to his or her past job or occupation.

SSR 82-62.

Based on the undersigned's above findings, the ALJ's RFC
determination has been left undisturbed.  *See supra*.  Accordingly,
the ALJ properly concluded that Plaintiff was capable of
performing work with no exertional limitations and was only
restricted to occasional climbing of ladders/ropes or scaffolds,
to avoidance of concentrated exposure to hazards and from working
in jobs requiring depth perception or acute peripheral vision.
(AR 21).

Vocational expert Scott Whitmer testified at the
administrative hearing held on October 23, 2006.  (AR 296-299).
Mr. Whitmer indicated that Plaintiff's past work as a warehouse
laborer was a medium-duty, unskilled job.  (AR 296).  Based on a
hypothetical which included the limitations assessed by the ALJ in
this case, the vocational expert testified that the individual

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 19

would be capable of performing Plaintiff's past relevant work as a warehouse laborer as generally performed in the American economy and as actually performed by Plaintiff.  (AR 297-299).

At step four of the sequential evaluation process, the ALJ found that, based on Plaintiff's RFC and the vocational expert's testimony, Plaintiff was capable of performing his past relevant work as a warehouse laborer, medium-exertion, unskilled work, and was therefore not disabled within the meaning of the Social Security Act.  (AR 24).

As indicated above, the ALJ's RFC determination was not erroneous.  Consistent with the Vocational Expert's testimony, the ALJ made a finding that Plaintiff's past relevant work as a warehouse laborer was medium-exertion, unskilled work.  (AR 24, 296).  The ALJ properly compared Plaintiff's RFC with the demands of his past warehouse laborer work and concluded that Plaintiff would be able to perform the job as actually and generally performed.  (AR 24).  The ALJ's step four findings were consistent with the directives of SSR 82-62.  Accordingly, the undersigned finds that the ALJ's step four determination was without error.

<u>**CONCLUSION**</u>

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED**.

///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 20

    2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED**.

    3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

    **IT IS SO ORDERED.**

    **DATED** this   8th   day of May, 2008.


_S/James P. Hutton_
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE